(No. 35741.—

DRAINAGE COMMISSIONERS OF HAMMOND MUTUAL DRAINAGE DISTRICT, Appellees, *vs.* EVELYN PONDER, Appellant.

*Opinion filed October 31, 1960.*

N. E. Hutson, of Monticello, for appellant.

Robert F. White, of Sullivan, (White & White, of counsel,) for appellees.

Mr. Justice Hershey delivered the opinion of the court:

Appellant, Evelyn Ponder, appeals from an order of the county court of Piatt County, striking the objections of the appellant to a certain assessment roll and confirming the commissioners' assessment roll of additional assessment for the Hammond Mutual Drainage District of the town of Unity, county of Piatt, and the towns of Lovington and Lowe in the county of Moultrie, hereinafter called the district.

The drainage commissioners of the district, on March 22, 1957, passed a resolution calling for the raising of the sum of $6,875 by "special assessment" and for the preparation of the necessary petitions and roll of assessments. On March 26, 1957, they filed their petition to confirm an additional assessment for repairs, maintenance and operation, filed their assessment roll and gave notice to the landowners.

Appellant owned several tracts of land included in the assessment roll, and she filed objections to the assessments against her lands. By a pretrial order the assessment against appellant's lands in section 31 was abated $10.38, representing the assessment of 9.71 acres, a portion of which was a part of the right of way of the Baltimore and Ohio Railroad and the remainder was a public highway. Appellant conceded that the southwest quarter of the southwest quarter of section 31, Township 16 North, Range 6 East of the Third Principal Meridian in Piatt County was within the district and withdrew her objections as to the assessment of that parcel. The assessment of approximately 120 acres in the same section 31 is in dispute, being the north half of the southwest quarter and the southeast quarter of the southwest quarter in that section. Appellant also objects to the inclusion of approximately 120 acres of land, being the northeast quarter, the northwest quarter, and the southeast quarter of the southeast quarter of section 18, Township 16 North, Range 6 East of the Third Principal Meridian in Piatt County, in the drainage district and the assessment roll.

The district was organized in 1889, under the Farm Drainage Act (Ill. Rev. Stat., 1953, chap. 42, par. 74.) Part of the lands of the objector, being the west half of the southwest quarter of section 31, Township 16 North, Range 6 East of the Third Principal Meridian, Piatt County, was included in the district by the then owners G. W. Cline and John B. Cline. James Ponder, father of the appellant and predecessor in title to the 120 acres owned by Evelyn Ponder in section 18, subscribed to an agreement on October 11, 1887, wherein he described himself as the owner of the entire south half of section 18, and in consideration of the benefits to his land and the privilege of draining into the proposed ditch, agreed to pay $150 to be applied on the construction of a ditch by the district as soon as completed.

Appellant denied that any part of the east half of the southwest quarter of section 31 drained into the ditches of the district, and contended that her tenant house and improvements which did drain into the district ditch were on the southwest quarter of the southwest quarter of section 31. J. R. Bower, engineer, Ray Ponder, commissioner and cousin of appellant, and William Schuman, variously testified that the improvements were on the east half of the southwest quarter, that the said lands drain naturally and by tiles into the district drains, and that the lands are benefited by the district drains, and the court so found.

The west half of the southwest quarter of section 31 and the south half of section 18 were included by the drainage record of the district in the county clerk's office and by the original assessment as being in the district. Although appellant's opinion was otherwise, a review of the record shows that the lands of appellant in section 18 drained to the south and west into the district drains. Witnesses testified to locating tiles running from Miss Ponder's lands in section 18 to the district drains. Her father and predecessor in title was one of the original commissioners and signed the original classification and assessment rolls including these section 18 lands in the district, and he paid the charges assessed against himself. The trial court also found these lands in section 18 to be a part of the district and properly assessed.

It is clear that all of the lands in sections 18 and 31, to the assessment of which appellant objects, are included in the district either by direct and express agreement, or by connection of artificial drains into the district drains and ditches. If the agreements of appellant's predecessors in title are not sufficient; certainly their construction of and connection of drains from all of these lands into the district drains and the resulting benefits effectively annexed these lands to the district. Ill. Rev. Stat., 1957, chap. 42, par. 8—2; *People ex rel. Caldwell* v. *Commissioners of*

*Wild Cat Drainage Dist.*, 181 Ill. 177; *People ex rel. Ennis v. Dick*, 276 Ill. 516; *People ex rel. Herman v. Commissioners of Bug River Special Drainage Dist.*, 189 Ill. 55; *Gar Creek Drainage Dist. v. Wagner*, 256 Ill. 338.

Appellant asserts that the levy is void because the resolution and minutes of the meeting of March 22, 1957, call for a "special assessment" for repairs to tile inlets, culvert pipes and headwalls; for spraying, mowing, and clearing the banks of the drainage ditch of underbrush and vegetation, and for maintenance, excavation, cleaning of ditch bottoms and repairs to ditch bank. Appellant contends that there is no statutory authority for a "special" assessment, or for any levy or assessment to cover all of these items. She argues that taxpayers cannot tell how much is to be spent for maintenance and expense of operation which should be included in an annual maintenance assessment, and how much for repairs which may be included in an "additional" assessment.

On May 13, 1959, the commissioners, being then aware of the use of the word "special" in the resolution and minutes of March 22, 1957, amended their minutes to delete the word and substitute "additional."

By section 5—1 of the Drainage Code (Ill. Rev. Stat., 1957, chap. 42, par. 5—1,) it is provided that the designation "additional assessment" shall apply to all assessments other than original assessments and annual maintenance assessments and shall include assessments for the completion of original, additional or repair work, the performance of additional or repair work, the payment of lawful obligations incurred by the district and for all other lawful purposes as set forth in the act. The same section provides that the term "original assessment" applies only to the first assessment levied for construction of the original work of the district, and that the term "annual maintenance assessment" applies only to assessments levied for the performance of the annual maintenance work of the district or the

operation of pumping plants. The "annual maintenance assessment" is an assessment confirmed by the court establishing a maximum annual assessment, within the limits of which the commissioners may annually levy, during the month of November each year, without the necessity of petition or filing a new assessment roll. It is based upon an established annual maintenance assessment and annual maintenance assessment roll, subject to revisions by the court, which is a permanent and continuing authorization. (Ill. Rev. Stat., 1957, chap. 42, pars. 5—19 and 5—20.) All other assessments, presented by new petitions at any time of the year and collected pursuant to authority granted only upon the prayer of that petition, not of a continuing nature, and based upon an assessment roll established for the particular assessment, constitute an "additional assessment" within the meaning of the statutes, no matter by what names they may be designated. Here the minutes have been amended to conform to the terms of the statute, although the assessment could not be rendered void simply by the name some person might attach to it.

There being no provision for a "special" assessment, and this resolution, these minutes and other proceedings being otherwise in conformity with the statutory requirements of an "additional" assessment, the commissioners properly amended the minutes to delete the word "special." *People ex rel. Reid* v. *Zellar,* 224 Ill. 408; *People ex rel. Krohn* v. *Please,* 344 Ill. 43.

It is lawful for the commissioners of a drainage district to keep the drains of the district in operation and repair, and without prior authorization of the court they may use corporate funds of the district to repair, maintain, operate or improve the drains and other works of the district when the same does not involve any substantial or material alteration or enlargement of the system. (Ill. Rev. Stat., 1957, chap. 42, par. 4—15.) The very definition of "additional assessment" authorizes such an assessment for repair work,

and all other lawful purposes as set forth in the act. (Ill. Rev. Stat., 1957, chap. 42, par. 5—1.) This assessment complies with the law and is a valid "additional assessment." The trial court correctly struck the objections of the appellant and confirmed the commissioners' roll of assessments as to appellant's lands.

The judgment of the county court of Piatt County is, therefore, affirmed.

*Judgment affirmed.*