THE PEOPLE ex rel. W. O. Wilcox et al. Appellants, vs. WILLIAM BARBER et al. Appellees.

*Opinion filed October 16, 1914—Rehearing denied Dec. 3, 1914.*

1. QUO WARRANTO—*office of information in nature of quo warranto.* The office of an information in the nature of *quo warranto* is not to tender an issue of fact, but merely to call upon the defendants, in general terms, to show by what warrant they are exercising the privilege claimed, and it is sufficient to allege, generally, that they are exercising the same without lawful authority.

2. SAME—*the People are not required to set out any specific facts.* In an information in the nature of *quo warranto* the People are not required to set out any specific facts upon which to base the charge that the defendants are exercising a certain privilege without lawful authority, but the defendants must in their plea either disclaim or justify, and if they justify they must set out such facts as will refute the charge.

3. SAME—*what is sufficient ground for information in quo war-ranto.* An information in the nature of *quo warranto* to test the legality of the annexation of lands under section 42 of the Farm Drainage act may rest solely upon the ground that the annexed lands had not been connected with the ditches of the district, and it is not necessary for the People to either allege or prove fraud by the defendants.

4. SAME—*pleading to an information waives alleged error in overruling a demurrer.* By pleading to an information in the nature of *quo warranto* the defendants waive their right to assign as error the overruling of a demurrer to the information based upon the alleged ground that the information was double, in that it charged the defendants with separate and distinct usurpations as to each tract of land claimed to have been annexed to defendants' drainage district without authority of law.

5. SAME—*what must be shown to justify annexing lands to a drainage district.* Where the defendant drainage commissioners attempt to justify their action in annexing the lands of the re-lators to the district, under section 42 of the Farm Drainage act, on the ground that the relators had connected their lands with the ditches of the district, it is incumbent upon the defendants to prove such connection as to each tract in controversy.

6. DRAINAGE—*what must be proven to show connection with ditches of district.* In order to establish that a tract of land lying outside a farm drainage district has been connected by the owner with the ditches of the district, it is not sufficient to show, merely, that the waters from such land ultimately pass into and through the district ditches, but it must further be shown that an artificial ditch has been constructed leading from the land directly into the district ditch or into some ditch which has theretofore been arti-ficially connected with the drainage ditch.

7. SAME—*what does not amount to connection with ditches of the district.* Where the lands in a drainage district as originally formed have always been servient, as to drainage, to lands not included in the district, the fact that the owners of the latter lands collect the surface waters upon their respective tracts and by means of tile drains or open ditches conduct them, in the natural course of drainage, into natural water-courses which directly or indirectly empty into the ditches of the district, does not amount to a connection of the lands with the ditches of the district, as meant by section 42' of the Farm Drainage act.

APPEAL from the Circuit Court of Christian county; the Hon. J. C. McBRIDE, Judge, presiding.

HARRY B. HERSHEY, State's Attorney, BROWN & BURN-SIDE, and JOHN E. HOGAN, for appellants.

TAYLOR & TAYLOR, for appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

This was a proceeding in the nature of *quo warranto,* brought in the circuit court of Christian county against the commissioners of Union Drainage District No. 1 of the towns of Pana and Assumption, in Christian county, to test the legality of the annexation by the commissioners of certain lands to said district. The information was filed by the State's attorney of Christian county upon the relation of W. O. Wilcox and M. Hutchins, two of the owners of land attempted to be annexed to the district, and attacked the legality of the annexation of the relators' lands and the lands of more than fifty other persons whose names and a description of the lands owned by each were set forth in the information. Thereafter, by leave of court, an amended information was filed upon the relation of all the owners of land mentioned in the original information. In other respects the amended information is substantially the same as the original information and questions the legality of the annexation of the same lands. The defendants demurred to the amended information, one of the special grounds of demurrer being that it is double, in that it charges the defendants with sixty-two separate and distinct usurpations. The demurrer was overruled, and the defendants filed pleas justifying their action in annexing said lands to the district on the ground that the relators had connected their lands with the ditches of the district, and had thereby, by virtue of the statute, applied to be included in the district, and that the defendants had thereafter, as required by statute, annexed said lands to the district and classified the same for the purpose of making assessments

thereon. A replication denying that the relators had connected their lands with the ditches of the district was filed, and the cause proceeded to trial before a jury upon the issue thus made. After hearing the evidence and viewing the premises in controversy the jury returned a verdict finding the defendants not guilty. A motion for a new trial was made and overruled and judgment was rendered in favor of the defendants. This appeal has been prosecuted from that judgment.

Before proceeding to consider the grounds relied upon by appellants for reversal it is necessary to dispose of the cross-errors assigned by appellees.

It is first urged by appellees that the amended information is fatally defective because it does not charge that the commissioners acted fraudulently in annexing the lands of the relators to the drainage district. This contention is necessarily the result of a misconception of the office of an information in the nature of *quo warranto*. If it be conceded that the action taken by the commissioners in annexing the relators' lands to the district could only be attacked on the ground that the commissioners acted fraudulently, still it would not be necessary to allege fraud in the information. The office of an information in the nature of *quo warranto* is not to tender an issue of fact, but merely to call upon the defendants, in general terms, to show by what warrant they are exercising the privilege claimed, and it is sufficient to allege, generally, that they are exercising the same without lawful authority. The People are not required to set out in the information any specific facts upon which to base the charge that the defendants are exercising a certain privilege without lawful authority, but the defendants must, in their plea, either disclaim or justify, and if they justify they must set out such facts as will refute the charge that they are exercising the privilege complained of without lawful authority. (*People* v. *Central*

*Union Telephone Co.* 232 Ill. 260.)    We are of the opinion, however, that the legality of the annexation of the lands of relators to the district can be attacked in this proceeding solely on the ground that such lands have not been connected with the ditches of the district and that it is not necessary for the People to either allege or prove fraud.    The pleas filed by the defendants, as well as the proof, show that the annexation of the lands of relators was made under and by virtue of section 42 of the Farm Drainage act, which provides that "the owners of land outside the drainage districts   *   *   *   may connect with the ditches of the district already made, by the payment of such amount as they would have been assessed if originally included in the district," and "if individual land owners outside the district shall so connect, they shall be deemed to have voluntarily applied to be included in the district, and their lands benefited by such drainage, shall be treated, classified and taxed like other lands within the district."    In *People* v. *Drainage Comrs.* 143 Ill. 417, it was said:    "No appeal is allowed by the statute from the classification of the lands of the relators or from the determination of the commissioners to classify them, and the right to classify and assess them being dependent, not upon any order of the commissioners, but upon the fact of connection with the ditches of the district, that fact was properly before the court upon *quo warranto*.    That fact is jurisdictional, and without it exists the proceedings of the commissioners in respect of classifying or assessing the land are without authority of law."    In *Shanley* v. *People,* 225 Ill. 579, following previous decisions of this court, we held that the determination by commissioners that lands lying outside a drainage district had been connected with the ditches of the district "can only be reviewed in a direct proceeding by *quo warranto*," clearly recognizing the right of land owners whose lands have, under section 42, *supra,* been annexed to the district by the commissioners, to have the question

whether their lands have been connected with the ditches of the district determined as one of fact in a proceeding in the nature of *quo warranto,* irrespective of the question whether the commissioners acted fraudulently in assuming jurisdiction over such lands. The statute makes no provision for a review of the decision of the commissioners upon this question of fact, and it is too well established to require discussion that the land owners are entitled to their day in court.

It is next urged that the court erred in overruling the demurrer to the amended information because the amended information is double, in that it charges the defendants with sixty-two separate and distinct usurpations, this contention being based on the fact that the amended information attacks the legality of the annexation of sixty-two tracts of land upon the relation of more than fifty land owners who own their lands in severalty. This suit was prosecuted in the name of the People upon the relation of the several relators, and in *People* v. *O'Connor,* 239 Ill. 272, referring to the practice in such cases, it was said: "The uniform practice has been in this State, where land owners seek to question the rights of drainage commissioners to incorporate their lands in a drainage district, to permit several land owners to join as relators in the same information." Moreover, appellees are not now in a position to question this action of the court, because by pleading to the information they waived their demurrer and cannot now assign error upon the action of the court in overruling the demurrer. *Beer* v. *Philips,* Breese, 44; *Nordhaus* v. *Vandalia Railroad Co.* 242 Ill. 166.

The cross-errors are not well assigned.

The principal ground relied upon by appellants for reversal is, that the court erred in refusing a peremptory instruction, offered at the close of all the evidence, directing the jury to return a verdict of guilty against the defendants as to each tract of land belonging to the relators.

265 –21

This instruction should have been given. The commissioners having attempted to justify their action in annexing the lands of the relators to the drainage district and in exercising the authority of drainage commissioners over those lands on the ground that the relators had connected their lands with the ditches of the district, it was incumbent upon them to prove such connection as to each tract of land in controversy. (*People* v. *City of Peoria,* 166 Ill. 517; *People* v. *Bug River Drainage District,* 189 id. 55.) This they not only failed, to do, but, on the contrary, the evidence offered by them shows that no such connection had been made as would warrant them in assuming jurisdiction over the lands of any of the relators. The theory upon which the commissioners proceeded in annexing these lands to the district seems to have been that section 42 of the Farm Drainage act authorized them to annex to the district all lands whose waters ultimately found their way into the ditches of the district. This is apparent from the testimony of the commissioners. J. A. Rayhill, one of the commissioners, testified: "We went over all these lands when we were seeking to annex them to the district, and found them all higher than the drainage district lands. * * * We took the water and the levels of the land, and wherever the water sloped so as to drain towards the district and the water finally ran into the district we included that tract, and that is true as to any tract in the information. The way we found it, we found where the watershed was, where the water ran off into some other outlet and where the water ran into the district, and if it drained towards and finally emptied into it we attached them." W. D. Fribley, another of the commissioners, testified: "We were aiming to take in this watershed and waters that run into this ditch with the ditches that drained the land. We were undertaking to take in all the lands, with their ditches and drains, that drained into this ditch; and that was what we did, and that was particularly the

basis that determined in taking it in. We considered that whatever waters finally ran into the ditch would be beneficial to the land. That reason, coupled with the reason that we were put to a great expense to take care of their water, was the reason." Upon no other theory could the commissioners have annexed the lands of the relators to the drainage district. There is no proof whatever showing that any individual relator has directly connected a ditch carrying water from his or her land with a ditch of the district, nor that he or she has connected a ditch carrying water from his or her land with any ditch theretofore artificially connected with the district ditch. The evidence shows that the lands included in the drainage district as originally formed, so far as drainage is concerned, are, and always have been, servient to the lands of the relators, and that the relators have done nothing further than to collect the surface waters upon their respective tracts of land and by means of tile drains and open ditches conduct them, in the natural course of drainage, into natural water-courses which either directly or indirectly have as their outlet the ditches of the district. Such acts on the part of land owners outside a drainage district do not constitute connecting with the ditches of the district within the meaning of the statute. In order to establish that a tract of land lying outside a drainage district has been connected by the owner with the ditches of the district it is not sufficient to merely show that the waters from that tract ultimately pass into and through the district ditches, but it must further appear that an artificial ditch has been constructed leading from that land directly into the district ditch or into some ditch which has been theretofore artificially connected with the drainage ditch. Such is, in effect, the substance of our previous decisions upon this question. (*People* v. *Drainage District,* 155 Ill. 45; *People* v. *Wild Cat Drainage District,* 181 id. 177; *Gar Creek Drainage District* v. *Wagner,* 256 id. 338.) The proof fails to show that any of the

relators' lands have been so connected, and the authority of the drainage commissioners to annex the lands in controversy to the district was therefore not established.

The judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*